Gantt, J.
In the consideration of this case, it seems necessary in the first place to recur to a former suit between the parties to this action. September 15th, 1870, Saunders ■ brought suit against Wilcox for the specific performance of a contract entered into between these parties, wherein Wilcox agreed to convey to Saunders a certain parcel of land. This suit was determined December 7th, 1872, and the court found that such contract was made between the parties, and that the plain tiff was entitled to a specific performance of the contract, and to a deed for the land from the defendant; and further found that an accounting should be had between the parties, and that the plaintiff had paid the defendant on said contract for said land over and above the amount due therefor; and further found “that for the rent, use and occupation of the land, and improvements, and all damages thereto by *573 defendant, further suit must he had, or adjustment made therefor by the parties as they see fit.” It was decreed that the defendant execute and deliver to the plaintiff, within twenty days, a good and sufficient deed for the premises, and in default of him doing so, that the sheriff of the county, as master commissioner in that behalf, make a deed to the plaintiff, and that the defendant pay to the plaintiff the balance found due to him. After-wards the decree was so modified as to extend the time for making such deed to sixty days, upon condition that the defendant execute to plaintiff and deposit with the clerk of the court for the use of plaintiff such deed for said premises, and at the end of which time, if the defendant shall not have procured the case to be docketed in the supreme court and given the undertaking required by law, the clerk shall deliver said deed to the plaintiff. April 13, 1873, the clerk delivered the deed to the plaintiff; and on the twenty-sixth day of the same month the defendant filed a transcript of the case in the supreme court, which was taken and filed as an appeal, and not upon petition in error.
The case now under consideration is an action in tort for trespass, waste' and other wrongful acts alleged to have been committed by Wilcox, defendant in the court below, upon the same premises in controversy in the former suit. And as one ground of defense in this action, the defendant set up in his answer, that he had taken an appeal from the decree in the former case to the supreme coiirt, and that the same was still pending in said court; and therefore he insists that the court erred in admitting the record and decree in the former case to be received in evidence on the part of plaintiff to show a determination of the controversy between the j>arties in respect to the land. It may be conceded that, if an appeal authorized by law, had been duly taken from the decree in the former suit to and was still pend *574 ing in the supreme court, the pendency of such appeal would be a bar to this action, for the appeal brings the case into the appellate court for trial de novo, and therefore all matters involved in, or depending on the determination of such case, could not properly be litigated in another action between the same parties while such appeal is pending. But did the defendant have the former case in the supreme court upon an appeal authorized by law?
An appeal is not a remedy to cure or remove an error in matter of law only, but it is a re-trial of the whole case upon the pleadings and proofs. In 3 Bouvier’s Institutes, 70, it is said that an appeal, in a civil suit, is a proceeding unknown to the common law. It is authorized by statute in a variety of cases, and is regulated entirely by the provisions of the act; it cannot be extended beyond the plain and obvious import of the statute granting it.
By act of February 15th, 1864, incorporated in the revised code of 1866, as title XXIV, entitled “ Chancery,” the right of appeal in equity cases was provided for, and the necessary provisions were made regulating the practice in such appeals; but by the act of June 19th, 1867, this entire title, entitled “Chancery” was repealed, and hence, the statutory right of appeal from the district court to the supreme court in equity cases then wholly ceased to exist. And the settled rule of law seems to be that when an act is repealed, it must be considered the same as if it had never existed, except such parts, if any, which are saved by the repealing statute. Butler v. Palmer, 1 Hill, 328. Surtees v. Ellison, 4 Mann & Pyl., 586.
It will not be questioned that to obtain redress by a¡3peal, the right to appeal must exist at the time; this right is not one at common law; it can only exist by statute, and as there was no statute granting such right *575 of appeal, at the time the decree was rendered, the legal sequence is, that there was no appeal, and therefore the filing of the transcript in the supreme court as an appeal in the former suit was a mere nulity — and I may remark by way of parenthesis it was afterwards so considered by the court, and for that reason dismissed. But did the defendant Wilcox, acquire any right of appeal under the provisions of. the act of March 3d, 1873? This is entitled “an act to provide for appeals in actions of equity;” and the first section simply grants the right of and regulates the practice in such appeals. The second section provides that “in actions hereafter heard and determined, when the proofs and testimony are taken orally before the court, on the hearing of the cause, the same shall be reduced to writing, in form similar to bills of exceptions and be allowed by the judge hearing the cause, as in cases at law.” In this respect, then, by express terms the right applies only to suits “heard and determined ” after the passage of the act. By the third section, the right of a supersedeas by bond, is expressly limited to cases pending and undetermined at the time of the passage of the act, and to actions brought thereafter. And in the whole act there certainly is no provision giving it a retrospective operation; on the contrary its whole tenor clearly indicates that it should apply only to causes determined after its passage. In the interpretation of statutes, it is a familiar doctrine that they can have no retrospective operation beyond the time of their commencement, •unless so declared by express words or positive enactment, and in such case they will be considered as inoperative and void, if they affect or change vested rights. Butler v. Palmer, supra. Calkins v. Calkins, 3 Barb., 310. Burch v. Newberry, 10 New York, 392. 1 Kent Gom., 455. It is therefore very clear that the defendant acquired no rights under this last named statute.
*576 Again, as another defense in the case under consideration, the defendant alleges that the plaintiff in his petition in the former suit claimed for use and occupation of the premises, prior to and during the pendency of that suit, and that the said suit is still pending in the supreme court.. As already shown that suit was not pending in the supreme court.
But can an action in tort and one purely in equity be joined in the same petition? If it cannot, then there is clearly no error in the ruling of the court in admitting the record of the former suit in evidence for the purpose for which it was offered.
In the discussion of this question it may be proper in the first place to recur briefly to the past legislation of the territory in respect to law and equity jurisprudence. It appears that the first session of the legislature, by act of March 16,1855, provided that “the district courts shall have original and exclusive jurisdiction over all matters and suits at law and in chancery,” except in cases in which the amount did not exceed twenty-five dollars, where justices of the peace had jurisdiction, and the same act provided for appeals to the supreme court from “final judgments and decrees in chancery.”
The act of November 1, 185S, which substantially forms the basis of our present code of civil procedure, in the third section declared that “ the distinction between actions at law and the forms of all such actions” theretofore existing were abolished, and substituted in their place but one form of action, called a civil action. It will be observed that this section referred only to actions at law, and that it was not, by implication or otherwise, the legislative intent to include within its operation suits in equity; and this fact is clearly indicated by the act of November 3, passed at the same session, entitled “an act for the appointment of masters in chancery,” which provides that some person residing in each county be ap *577 pointed a “ master in chancery, who shall have power to perform the duties of master in chancery, together with the powers of the judge of the district court of chancery in vacation.” The act of February 15, 1864, entitled “an act to regulate practice and proceedings in chancery,” provided a full and-complete code of chancery practice aiid proceedings.
In the revision of the code of civil procedure, by act of February 12, 1866, by the second section, it is declared that “ the distinction between actions at law and the forms of all such actions and suits heretofore existing are abolished, and in their place there shall be hereafter but one form of action, which shall be called a civil action;” but by title XXIY., entitled “ Chancery,” of this same civil code, the legislature re-enacted the chancery code of 1864, as a full and complete system of equity practice and proceedings, separate and distinct, and in contradistinction to that part of this code in respect to actions at law. And hence it seems clear that by legislative construction, when the code is taken as an entirety, as well as by legislative intent, a marked distinction between actions at law and in equity was preserved, and that the revised code attached to the judge of the district court all the attributes and vested him witli all the powers of a court of law and with all the powers of a court of equity. If such had hot been the intention of the legislature, it would not, as a part of the same code, have enacted a separate and' distinct system of equity practice, complete in itself. Therefore, by the passage of the general code there ceriainly was no abolition of the distinction between actions at law and in equity, or of the forms of all such actions and suits; in other words, there was no merger of the two jurisdictions of the courts. And this course of legislation was in conformity with the fundamental rule provided by the organic act, which declared that the “supreme and district courts, respectively, shall possess chancery
*578 as well as common law jurisdiction.” Tims the statute law, as it existed from the organization of the territory, remained when the constitution of the state went into force, on the first day of March, 1867. And bjr express provision of the constitution, “ both the supreme and district courts shall have both chancery cmd common law jurisdiction,” and hence the distinction between law and equity is clearly preserved by the fundamental law of the land. But it may be urged that by aet of June 19, 1867, title twenty-four of the code of civil procedure, entitled “ Chancery,” is repealed, and that it is provided that causes of actions which theretofore had been determined legal and equitable, or both, might be joined in the same petition in all cases in which joinder of causes are allowed in actions at law; and that by section one of this act it is further provided “that the distinction between actions at law and suits in equity and the forms of actions and suits heretofore existing, are abolished; and in their place there shall hereafter be but one form of action, which shall be called a civil action.” There are three distinct propositions contained in this act: First. The abolition of the distinction between actions at law and in equity. Second. The abolition of all forms of suits in equity as well as actions at law heretofore existing. Third. The substitution in their place of but one form of action, called a civil action; or in other words, the merger of the two jurisdictions and the blending of law and equity in one form of action, called a civil action. But at this same legislative session, by act of June 24, it is provided that under certain circumstances, whenever a person who is bound by a contract to convey real estate shall die before making the conveyance, the person entitled thereto may have a bill in chancery to enforce a specific performance of the contract by his heirs, devisees, or the executor or administrator of the deceased party who made the contract. Hence it *579 seems that at this same session of the legislature equity jurisdiction was again restored to the courts, at least to some extent. But can the legislature abolish the jurisdiction given to 'the courts by the constitution? It is conceded that the legislature may abolish the distinctions which heretofore existed in merq matters of form in actions at law or suits in equity, and provide that each shall be commenced by petition, in which a statement of the facts, in ordinary and concise language, constituting the cause of action and a prayer for the relief sought, shall be- sufficient in either case; and again, that the legislature may by statutory provisions allow equitable defenses to actions at law to be pleaded and maintained which do not exist under the rules of the common law, will not be questioned; but an attempt to blend the two in respect to matters of substance and principle, it seems to me, would not only subvert the jurisdiction of the courts but would also be clearly repugnant to the constitution. It is a familiar doctrine, well understood, that the distinction between actions at law and equity consists in the different modes of relief in the two jurisdictions; in the one, with few exceptions, the relief consists in a pecuniary compensation in damages for the injury received, and in the other the court has power, in its discretion, to give such relief as the circumstances of the case may require; in the one case the party is entitled to a trial by jury, and in the other the hearing is exclusively by the court upon the pleadings and the facts. How, then, is it possible to make these two modes of relief identical? Indeed the very nature and purpose of each, when considered in re-' spect to their modes of trial and relief, are such as clearly demonstrate the impossibility of abolishing the distinction.
But if the legislature has not the power to blend law and equity into one action, called a civil action,and thereby subvert the one to the other jurisdiction, or to abolish *580 the distinctions between actions at law and in equity, upon what principle is it possible to maintain the power to do so on the ground that it has indicated the exercise of such power by piecemeal in various sections of the code? "Would not such a ¡process of reasoning be getting within a very small cirqle? The logic is this: although the power of the legislature is constitutionally inhibited in certain respects, yet in various parts of the code it is strongly indicated that it has exercised such power; therefore the power does exist. Such rule of interpretation need only to be mentioned to see its absurdity. I think the only safe rule is to follow the fundamental law as it is plainly written, regardless of consequences, and even if inconveniences may result from doing so yet such inconveniences should have no weight, for neither courts or legislatures can remove such inconveniences, if any do exist; it can only be done by those who made the instrument. It is certainly the duty of courts and legislatures to take the constitution as it is plainly declared by the people in the instrument, and if they should depart from this rule it might beeome impossible for the people to fix constitutional boundaries to the government. The constitution gives the citizen the right to seek his redress by action at law or in equity, according as the nature of his claim or demand may require the one or the other mode of redress. Can the legislature deprive him of this right? The constitution gives the supreme and district courts “ both chancery and common law jurisdiction.” Will it be contended in the face of this express constitutional provision that the legislature has power to blend together law and equity, and thereby subvert the jurisdiction of the courts in regard to the one or the other action?
It iá" said that a constitution is the form of government delineated by the people in which fixed principles are established; that it is the supreme law of the land, *581 made by the people themselves in their original, sovereign and unlimited capacity; that legislatures are creatures of the constitution, owe their existence to it, derive their power from it, and therefore every legislative act clearly repugnant to it is void. Vanhorn v. Dorrence, 2 Dall., 308. Marbury v. Madison, 1 Cranch, 176. Oakley v. Aspinwall, 3 Comst., 547. Bloodgood v. Mohawk & Hudson R. R. Co., 18 Wend., 63. Sedg. on Const. Law, 468, 493.
It will hardly be contended that the act of June, 1867, is conformable to the constitution.
The sixty-ninth section of the code of New York provided that “ the distinction between actions at law and suits in equity, and the forms of all such actions heretofore existing, are abolished; ” but the constitution of that state declared that “there shall be a supreme court having general jurisdiction in law and equity!” The question in respect to the power of the legislature to abolish the distinction between actions at law and in equity and the form of such actions existing prior thereto, came before the court of appeals in the case of Beubens v. Joel, 3 Kern., 493. And in this case it is said that the most marked distinction between these actions consists in their different modes of relief, which cannot be made identical. “It is possible to abolish the one or the other, but certainly it is not possible to abolish the distinction between them,” but “will it be contendedtliat in the face of these (constitutional) provisions that the legislature has power to abolish the jurisdiction of the courts, either at law or in equity? * * * It is plain, without authority, that the constitution by conferring jurisdiction in law and equity, has not only recognized the distinction between them, but has placed that distinction beyond the power of the legislature to abolish, which it could only do by abolishing one or the other of the two jurisdictions.”
*582 In Voorhies v. Childs, Exr., 17 N. Y., 361, the same doctrine is held, and it is said that the constitution “presents an inseparable barrier to any legislative merger of the two jurisdictions,” and that it “is easy to show that to blend the two in respect to matters of substance and principle would be virtually to subvert the jurisdiction of the courts, in regard to the one or the other, which the legislature certainly has not the power to do.”
In Parsons v. Bedford, 3 Peters, 446, it is held that the distinction between the two forms of action was present in the minds of the framers of the constitution, and that the “phrase, common law, found in the constitution is used in contradistinction to equity.” In Clausen, v. Lafrange, 4 G. Greene, 226, the counsel alleged that law and equity were blended by the statute and attempted to justify under it, declaring that it abolished all distinctions in the forms of action, and removed all demarkation between law and equity jurisdiction. The court however, said that “the constitution declared that the ‘district court shall be a court of law and equity.’ The district court is vested with all the powers of a court of law and with the powers of a court of equity. Here the two distinct attributes are attached to the district judge. He is vested with chancery jurisdiction, and all the general powers of a court of law. In conferring the separate powers on the district court, the constitution makes an obvious distinction. Law is as much distinguished from equity, as civil matters are distinguished from criminal,” and therefore it is held, “that the distinction between law and equity cannot be constitutionally abolished.” Bennett v. Butterworth, 11 How., 675. Cooper v. Armstrong, 3 G. Green, 123.
This doctrine in the construction of statutes, clearly repugnant to the constitution, seems tome tobe so firmly established by both authority and principle, that any attempt to shake it must be vain. And hence, under our constitu *583 tion in bringing actions by petition, legal and equitable causes should not be blended in one action. The distinction between law and equity is preserved, and therefore when the cause of action is purely upon a legal claim, and especially one in tort, it must be an action at law, and the case must be determined according to the rules of law, and when the claim is one purely of an equitable nature, the action must be determined according to the rules regulating proceedings and practice in equity. If these views of the law are correct, then it is clear that the claim for damages set up by the plaintiff in his peti tion in the former suit between these parties was an improper joinder of action, and the court properly refused to permit the joinder of such cause .of action in the case, and dismissed the same. Mayo v. Madden, 4 Cal., 27. Winnipissiogee v. Worster, 9 Foster, 442. Story’s Eq., Pl., Sec. 10; and upon this ground the conclusion is inevitable that no error was committed as complained of in admitting in evidence the record and decree in the former suit. This view of the case also disposes of the error complained of in admitting in evidence the deed from defendant to plaintiff.
The affidavit of defendant setting forth that after the trial was ended he discovered that one of the jurors in the case had not been a resident long enough to become an elector is not sufficient ground to set aside the verdict and grant a new trial. “If the objection had been taken before the trial by W'ay of challenge it would have prevailed on strictly technical grounds, but after the trial it was too late. It is an objection which does not affect the impartiality or intelligence of the juror, and furnishes no presumption against the justice of the verdict.” Rockwell v. Elderkin, 19 Wis., 368. Eastman v. Wright, 4 Ohio St., 160. Parks v. State, 4 Ohio St., 236.
Again a new trial was asked on the ground that the verdict was excessive and is not sustained by sufficient *584 evidence. This ground, of complaint cannot be examined in this court,'because the bill of exceptions does not either expressly or by necessary implication show that it contains all the evidence given to the jury on the trial. The nature of the inquiry suggested by such grounds for a new trial demonstrates the necessity for the rule, that the record must affirmatively show the fact that all the evidence given to the jury on the trial is contained in it. The inquiry does not involve a question of law, but simply one in the nature of an appeal from the j ary on the facts; and without all the evidence given to the jury, it is impossible to say whether it justified the verdict or not. Eastman v. Wright, 4 Ohio St., 159. Walker v. Lessee of Devlin, 2 Ohio St., 593.
The paper offered in evidence to establish a co-partnership between plaintiff in error, defendant, and one A. Saunders, in regard to the cultivation of trees, grape vines and fruits was projierly rejected, because, as shown by the copy in the bill of exceptions, there was only the signature of one person subscribed to the paper, and therefore it could not be made evidence of a tri-partite contract. The judgment must be affirmed.
The opinion of a majority of the court in affirmance of the judgment was delivered by Chief Justice Lake, as follows:
Lake, Ch. J.
There is no conflict between the different members of the court in the conclusion to which we have come, that the judgment of the court below should be affirmed. But we do not agree as to the reasons which have lead to this result.
In the opinion prepared by Mr. Justice Gantt we find expressed certain peculiar views in regard to one-of the leading provisions of the Code of Civil Procedure, *585 so decidedly at variance with our own, that we shall give very briefly not only our reasons for the affirmance of the judgment, but also the views entertained by a majority of the court as to the constitutionality, and effect, of that section of the Code which he has criticised so severely.
The action in the court below was brought by Saunders against "Wilcox to recover for damages alleged to have been sustained in consequence of the wrongful occupation of, and injury to, certain premises of the jffaintiff. These premises had been the subject of a prior litigation between these same ¡parties, in an equitable action brought by Saunders wherein he recovered the legal title from Wilcox, who was the former owner of the fee. Saunders’ right to maintain this second action, therefore, depended upon the judgment he had recovered in the former suit.
One of the principal defenses interposed by Wilcox in this action for damages, was the alleged pendency of the former suit, in consequence of his having prosecuted an appeal to this court.
Had this allegation been true in fact, it would have been a complete defense to this action, for an appeal brings up the whole case for trial de novo, and the rights of Saunders to the locus in quo would have been postponed until final trial and judgment here. But on the trial in the district court it was held, that no appeal had been taken, or, in other words, that it was not an appeal-able case, and so it was subsequently decided by this court on review. Under this ruling the plaintiff was enabled to go forward with his case to final judgment; and this is one of the errors now complained of.
There was no error, however, in holding that no appeal had been taken from the former judgment. That question was set at rest by the action of this court on the .motion of Saunders to dismiss the alleged appeal in *586 the former case. And as to the admission of the record of that suit in evidence, that was proper for the ptuqiose of showing title in the plaintiff to the premises in cuestión. And this record was also proper, and necessary, for still another purpose. It was answered that this claim for damages to the lands, etc., was included in the former action, and could not therefore be made the subject of another suit. But this record showed that, although these matters were included in the petition, they were expressly excluded by tlie court, and not taken into account in the decision of that case. Tlie language of the court was, “that for the rent, rise and occupation of the land, and improvements, and all damages thereto by tlie defendant, further suit must be had, or adjustment made therefor by the parties as they shall see fit.”
Now the question here is not whether this claim for rents, damages, etc., could properly be joined in tbe action for tbe recovery of the title from Wilcox, for, whatever tlie rights of Saunders may have been in this particular, it is enough for our present purpose to know that these demands were not adjudicated in tlie former action, but were by the express order of the court excluded from that case and remitted to the parties themselves for settlement by suit or otherwise, but the question is whether the record of the former suit was properly admitted in evidence in tbis one. And tlie majority of tlie court bold that it was competent evidence and properly admitted to show, first, that Saunders was the owner of the land; and, second, to prove that his damages, occasioned by tlie wrongful occupation thereof by the defendant, bad not been adjudicated. We hold further that whether rightfully or improperly done the court bad actually excluded these matters entirely from its consideration, and therefore they were a proper subject for litigation in the present suit. That judgment being still in Ml force was conclusive and *587 binding upon, both parties, and could not be assailed indirectly by questioning its correctness in another action. But, while it is final as to all questions then before the court, and upon which it assumes to pass, this is all that can properly be claimed for it; while as to all those matters expressly dismissed from the consideration of the court, they were left in the same condition precisely as if they had never been brought into the case. The practical effect of this order of the court was a dismissal of these claims, without prejudice to a future action thereon.
Now this disposition of these several demands, especially the one sounding in tort, is justified by our brother Gantt on this ground alone, that under the old chancery practice, which he holds the legislature was powerless to abolish, they could not be properly joined in the action for the recovery of the title to the land.
But a majority of the court do not assent to this doctrine. We hold that the legality of that order is not now in controversy. Whether right or wrong, all questions thereby determined must so remain as between these parties unless changed by their own voluntary action.
Nor do we conceive it to be either necessary, or profitable, now to determine whether or not these demands 'could have been joined, under the code, in the action for the recovery of the title from Wilcox. On this point however it may not be out of place to quote from the decision of the supreme court of the state of Ohio, in the case of Sturgess v. Burton, 8 Ohio State, 218, where this language is used; “by the provisions of the code the plaintiff may unite in one' action all causes of action arising from the same transaction or transactions connected with the same subject of action, and this includes causes of action legal and equitable, ex contractu and ex delicto; but if the causes of action do not arise from the same transaction, or transactions connected with the same *588 .action, then the causes of action ex contractu cannot, in general, be united with causes of action ex delicto.”
Prom this there would seem to be no doubt that, in a •real action for the recovery of the land itself, not only a demand for use and occupation, but also one for damages ■caused by a tortious injury to the premises, might be •included in the same petition. But it is not so clear, indeed we think it is quite doubtful, that in an action for the recovery of the legal title from one holding it in trust, a claim for such damages could be united.
In regard to the power of the legislature, under the •constitution of 1867, to blend law and equity eases in one form of action by the abolition of the distinction formerly existing between them, and authorizing their joinder in the same petition, we entertain no doubt whatever. On the contrary we think the authority to do all .that the code provides in this particular is clear.
The constitution, it is true, confers upon the supreme and district courts “ both chancery and common law jurisdiction.” All, however, that could have been intended by this was to unite in these courts respectively the two distinct jurisdictions which were formerly vested in separate and entirely distinct tribunals. Whatever the rights of a suitor under the constitution and laws of the state might have been, whether of a legal or an equitable nature, these courts in a proper case made, were authorized to enforce. And, doubtless, in the absence of all legislation on the subject of procedure, these courts would have been justified in resorting to that established the chancery and common law courts, respectively, as their guide.
We cannot give assent to the notion that it was the design of the constitution to deprive the legislature of the authority to control the action of these courts in matters of mere practice, so long as no substantial right of a suitor was taken from him.
*589 The code does not profess to abrogate that distinction, which in the very nature of things must always exist between legal and equitable rights and remedies, nor to deprive any person of as complete redress, for every conceivable wrong done to him in his person or estate, as he formerly could have had. But it does require that, whatever the nature of the right to be enforced, or the wrong to be redressed may be, whether such as formerly would have been cognizable in either a court of chancery, or in a court of law, the simple form of a “ civil action ” must be followed, in which a plain statement of the material facts constituting the cause of action, or the defense, must be set forth in concise language, and without repetition. Thus while the ancient forms of action are now abolished, all the various remedies known to the law still remain, and are administered through the medium of the single “ civil action ” of the code, quite as certainly and much more speedily, than they were under the former practice.
Mr. Willard in his admirable work on Equity Jnrisprudence, under the code of New York, in language equally applicable to our own says: “The continuance of equity as a distinct branch of jurisprudence, and of the application of equitable as well as legal remedies, are ^plainly inferrable from the language of the code, and have been repeatedly recognized by the courts. The former names of actions are dispensed with. The subject matter which constitutes the basis of the claim to relief must be stated now as well as formerly, but the cumbrous phraseology which sometimes obscured a former bill in chancery is dispensed with, and the material facts alone, in distinction from matters of evidence are required to be set forth.” Wil. Eq. Jur., 37. And, again on page 43, he says: “Relief may be obtained under the code in all cases where it could be granted before, whether at law or in equity. The subject of rights and wrongs remains •unchanged. The remedy to enforce them, or to prevent *590 their violation, or to obtain satisfaction for their violation, still exists, but under a different name. A civil action, nomen generalissimiom, comprises within itself all the former actions both at law and in equity.”
This is sufficient, we think, to show that, notwithstanding the two systems of procedure — the common law with its arbitrarily formal actions, of assumpsit, debt, detinue, trespass, trover, and the like, on the one hand — and the chancery with its next to interminable bills, having their nine distinct sub-divisions on the other, together with their almost endless paraphernalia, have been dispensed with in this state, and by the act of June 19th, 1867, at the first session of the legislature under our former constitution, the two systems united in one single form of action, — still the constitutional jurisdiction of the courts was not thereby in the least abridged, but in complete harmony with both the language and the spirit of the code of civil procedure, yet remains as formerly, and extending to all rights and remedies of whatsoever nature, whether of chancery or common law cognizance under the former system. The mere forms, it is true, have departed, but the entire substance of both jurisdictions is still preserved to us.
The admission of the deed from .Wilcox to Saunders in evidence is also assigned for error. But the views above expressed as to the pendency of the appeal in the former suit disposes of this question also. This deed ■was made in obedience to the judgment of the district court. It was a necessary link in the plaintiff’s chain of evidence to prove his title to the land, and was properly admitted for that purpose.
The objection that one of the jurors was disqualified by reason of his non-residence within the county for a sufficient length of time comes too late. If the disqualification were known, the objection should have been made by a challenge of the juror before the trial, but if *591 not known, then the record should show that a timely effort was made to ascertain the fact by an examination of the juror on his voir dire. And this is the rule even in capital cases. Parks v. The State, 4 Ohio St., 236.
Another objection is that the verdict was excessive, and not sustained by sufficient evidence. This question cannot now be considered for the reason that the bill of exceptions does not purport to give all the evidence submitted to the jury. It is well settled that an appellate court will presume the verdict to be right, and the evidence ample to sustain it until the contrary is shown. The Midland Pacific Railroad Co. v. McCartney, 1 Neb., 398.
As to the writing offered in evidence by Wilcox for the purpose of showing the existence of an alleged co-partnersliip between defendant in error, one A. Saunders, and himself, for the cultivation of trees, fruits, etc,, . upon the land during at least a portion of the time of his adverse occupancy, it was rightly rejected. It may have been intended to make it the evidence of such an agreement, but having been signed by but a single one of the parties it cannot be so considered.
For these reasons we are of opinion that the judgment should be affirmed.
Mr.-Justice Maxwell concurs.
Judgment affirmed.