EVA BELL HAIGHT, APPELLANT, V. OMAHA & COUNCIL
BLUFFS STREET RAILWAY COMPANY, APPELLEE.

FILED NOVEMBER 13, 1915.   No. 17889.

1. **Jury: DRAWING OF PANEL: PRESUMPTION.** In counties of 30,000 or
more inhabitants the regular panel of 30 jurors for each judge of the
court must be drawn by lot from the regular jury list, and cannot
be filled by the sheriff by calling bystanders. The regular jury list
consists of not less than one-fifteenth of the legal voters of the county,
and it will not be presumed, in the absence of evidence, that the list
was exhausted in the ordinary work of the court.

2. ——: ——: TALESMEN. In case the jury list should be exhausted
so that the panel could not be filled as the law requires, talesmen might
be called, if "required in such court for trial of any cause" (Rev.
St. 1913, sec. 8156), but the regular panel cannot in any case be
filled in that manner. The third paragraph of the syllabus of our
former opinion (97 Neb. 293) is disapproved.

3. ——: IRREGULAR PANEL: NOTICE: PRESUMPTION. The parties to
an action are supposed to take notice of formalities in making jury
lists which are required by statute and regularly shown upon the rec-
ord, but not necessarily of orders made in the trial of other cases in
which they are not interested, or that the regular jury panel had been
exhausted in the trial of a prior case, and had then been unlawfully
filled by calling bystanders.

4. ——: DRAWING OF PANEL: PRESUMPTION. If there is no order to
call talesmen in the case in which counsel are interested, and the
jurors are called by the clerk in the ordinary manner, they may rely
upon the statute which requires that the jurors be called from the
regular panel.

5. **New Trial: JURY: IRREGULAR PANEL.** It is erroneous to order that
the regular trial panel be filled from bystanders. If the panel has
been so formed, and a jury called therefrom for the trial of a cause,
without the knowledge of the parties thereto until after the trial of
the case that the panel has been so filled, and the objection is made in
a motion for new trial regularly filed, such objection should be sus-
tained and a new trial granted.

REHEARING of case reported in 97 Neb. 293. *Former
judgment of affirmance set aside, and judgment of district
court reversed.*

SEDGWICK, J.

Our former opinion is reported in 97 Neb. 293. The rehearing was allowed upon one proposition only—whether the court erred in not finding that the jury which tried the case was illegally constituted. The statute (Rev. St. 1913, sec. 8148 *et seq.*) provides that in counties having more than 30,000 inhabitants a list of names shall be made by the proper officers and placed in a box or wheel (sections 8148, 8153), and that from this list the clerk of the district court shall draw by lot 30 for each judge of the district court, who shall constitute the regular panel (section 8154). It also provides that, if the regular panel of 30 so constituted is exhausted, the judge of the district court shall order the clerk to fill the panel by drawing more names from the wheel or box. The parties so drawn are to be notified by registered letter. This, of course, takes some time. If, before they appear, a case is called and the panel is not sufficient, then the court may order the sheriff to call bystanders or men from the body of the county to act in that case. Some time before this case was tried in the district court, one of the judges was trying a criminal case, and he made an order reciting that the panel was exhausted and ordering the sheriff to call men from the body of the county to fill the panel in that (criminal) case, and then added these words: "Or such other cases as might be assigned for trial during the remainder of the third three weeks of the October, 1910, term." It seems that when the sheriff called these men they were treated by the clerk as a regular panel, and when the plaintiff's case came on for trial they were called as of the regular panel and sat upon the trial of the plaintiff's case. The plaintiff contends that the sheriff could not call men from the body of the county, except for the trial of the particular case in which he was ordered to do so, and that this plaintiff did not know that the regular panel had been filled by the sheriff from the body of the county, or that the regular panel had been exhausted, and

so was not bound to make objection before the trial of her case. It seems clear that under the statute the court had no jurisdiction to order the sheriff to fill the regular panel for other cases that might be assigned by calling men from the body of the county.

In Thompson & Merriam, Juries, sec. 102, published more than 30 years ago, it is said: "The frequent necessity of summoning talesman has had the effect of breeding in every community a disreputable class of loiterers about courtrooms, having no other purpose than to be selected for jury service. So conspicuous has this evil become of late years, that these persons have been dubbed with the distinctive title of 'professional jurors.'" The same evil continues, and it not infrequently happens that, when a case of public interest is about to be tried, many friends of the parties gather at the place of trial, and the sheriff, if conscientiously trying to perform his duty, is at a loss to know who of the bystanders might unduly favor the interests of either party. The same authors said: "'All questions touching the formation of juries,' said Mr. Justice Coleridge upon an important occasion, 'must be examined by the judges with very critical eyes.' This expression is a fair illustration of that solicitude for the right of the subject to an impartial jury, which has characterized the English law from the earliest period of its history." Section 125.

If the sheriff, in filling the panel for the trial of the prior criminal case, succeeded in avoiding all who might be interested for or against the defendant in that case, he still might have called the very men who should not be called for this subsequent case. To guard against errors of this nature, the statute provides for the larger cities a specific method of filling the panel not required in the less populous counties. The general statute for smaller counties (Rev. St. 1913, sec. 8143) does not apply. That section of the general act was in the Revised Statutes of 1866, p. 511, and in 1905 (Laws 1905, ch. 177) the statute providing specially for the more populous counties was en-

acted.    Rev. St. 1913, sec. 8148 *et seq.*    That statute (section 8156) provides that to fill the panel, when necessary, "the clerk of such court shall, when ordered by the judge, again repair to the office of the county clerk, and draw in the same manner as at the first drawing, such number of jurors as the judge shall direct, to fill such panel." The same section provides: "In case a jury shall be required in such court for trial of any cause, before the panel shall be filled in the manner herein provided, the court may direct the sheriff to summon from the bystanders, or from the body of the county, a sufficient number of persons having the qualifications of jurors, as provided in this article, to fill the panel, in order that a jury to try such cause may be drawn therefrom, and when such jury is drawn, the persons selected from the bystanders, or from the body of the county, to fill the panel, and not chosen on the jury, shall be discharged from the panel, and those who shall be chosen to serve on such jury shall also be discharged from the panel at the conclusion of the trial." This is a positive declaration that in these populous counties jurors called as talesmen for the trial of any case shall not be placed upon the regular panel, but must, when not wanted for, or when they have served in, the case for which the sheriff has called them, be discharged, and, to leave no doubt of the intention of the legislature, the section closes with the following proviso: *"Provided, persons selected from the bystanders, as provided in this section, shall not thereby be disqualified or exempt from service as jurors, when regularly drawn by the clerk for that purpose in the manner provided in this article."* The regular panel could only be filled by drawing names by lot from the lists prepared and in the wheel or box. The proceeding was erroneous, and the question is whether the plaintiff is estopped to make the objection now because she did not make it before the trial. Was the plaintiff bound to know that the regular panel was exhausted and that the court had filled it in an unlawful way? If she was, she is now estopped to complain, but if she was

not bound to know that, and made her objection in the district court, as it seems she did, upon the motion for new trial filed in due time, then the motion should have been sustained, and the judgment is erroneous.

Ordinarily a challenge to the array, to be available, must be made before the trial. A party cannot voluntarily take his chances with one jury, and then obtain another trial on the ground that the jury was irregularly called or some of its members disqualified. The parties are supposed to take notice of formalities prescribed by statute and regularly shown upon the records. But the parties to this case are not presumed to have been in court at the trial of the prior criminal case. They did not necessarily have notice that the panel of 30 jurors for the criminal court had been exhausted, or that the judge of that court had directed that bystanders called by the sheriff in the former trial should constitute the panel from which jurors should be called to sit in their case. The statute provided that the panel from which the jurors were to be called should be filled from the regular jury list, which must ordinarily contain the names of 500 or more qualified jurors and they could rely upon compliance with the statute in that regard. The presumption was that the regular jury list from the county at large prepared by the proper officers, before the term, and without reference to any particular case, would be unprejudiced and disinterested. The plaintiff might not regard it entirely safe to rely upon a similar presumption as to jurors called from the environment of the courtroom. The proceeding in this case was not only dangerous to the plaintiff's interests, but was in direct violation of the statute, and could not have been anticipated or guarded against.

Our former judgment is set aside, and the judgment of the district court is reversed and the cause remanded.

REVERSED.

LETTON, J., dissenting.

In the former opinion in this case (97 Neb. 293) three points were decided: (1) That there was sufficient evidence to support the verdict; (2) that it was not affirmatively shown that certain talesmen were improperly drawn; (3) that a party to a suit cannot wait until after the jury has returned an adverse verdict before raising objections to the qualifications of jurors.

The majority opinion does not consider nor controvert the first point, and, hence, we have the anomalous situation that, although a proper verdict has been rendered, it is set aside on account of a mere irregularity in filling the panel. As to the second point, upon further consideration, I am inclined to think that the law laid down in the third paragraph of the syllabus in the former opinion did not construe the statute properly, and that the present opinion makes the proper interpretation. This should not affect the judgment, because, as pointed out, the rule is that one will not be permitted to wait until after an adverse verdict before he questions the qualifications of a juror. If he does this, he waives his right to object. The majority opinion holding that this can be done overrules a number of former decisions of this court without mentioning them, and is contrary to the general rule in other states.

In 1 Thompson, Trials (2d ed.) sec. 116, Mr. Thompson says that the mass of American authorities is in conformity with this rule: "It has been repeatedly held that a cause of challenge not discovered until after verdict, whether the case be civil or criminal, as that some of the jurors were aliens, or *not* of the jury list as *selected* by the county authorities, * * * is not, *per se,* a ground of new trial, though it may be such in the discretion of the court. In the exercise of such a discretion, an essential inquiry will be whether the objecting party exercised reasonable diligence in ascertaining the qualifications of the obnoxious juror. Was he questioned on the *voir dire* as to the cause of challenge now alleged? If not, there has been

a lack of diligence on the part of the complaining party, which amounts to a waiver of the cause of challenge. * *. * In England and in many American jurisdictions a paramount inquiry upon such an objection is whether it has resulted in an unjust verdict; if not, the objecting party has sustained no injury, and a new trial will not be granted in order that public and private time may be consumed, and the dangers of other irregularities incurred, when the same result must, on a just view of the evidence, be reached. Unless there is plain evidence of injustice done to the party complaining, the verdict should be allowed to stand."

This has heretofore been the settled rule in this state, even in criminal cases. In *Wilcox v. Saunders,* 4 Neb. 569, it was held that the objection that a juror was disqualified by reason of not being a resident of the county for the statutory period was waived because not made before the trial, and that, if the disqualification was not known at that time, the record should show that an effort to ascertain the facts was made upon the *voir dire* examination; otherwise a new trial would not be granted.

In *Brown v. State,* 9 Neb. 157 (a criminal case), it was held that, as the law then stood, a district judge, in calling a special term of court, had no authority to order the sheriff to summon grand and petit juries, but it was also held that objection to the mode of selecting the jury must be made by challenge or plea in abatement, and that after the accused had pleaded to the indictment it was too late to object that the jury were not legally summoned.

In *Davis v. State,* 31 Neb. 247, 254, the county commissioners selected only 59 names, instead of 60, as jurors. The opinion says: "The statute requires that the commissioners shall select 60 names. It has been frequently declared by this court that the provisions of the statute relating to the selection of grand and petit jurors are mandatory and must be strictly followed. *Burley v. State,* 1 Neb. 385; *Preuit v. People,* 5 Neb, 377; *Brown v. State,* 9 Neb. 157; *Clark v. Saline County,* 9 Neb. 516; *Barton*

*v. State,* 12 Neb. 260.   No objection was made in the court below that the list from which the jurors were drawn did not contain the requisite number of names.   The sole objection there made related to the inequality of the selection, and that was raised for the first time in the motion in arrest of judgment.   This was too late.   It should have been taken before the trial, by motion to quash the panel. The defendant waived all errors in the manner of selecting the jury."

*Turley v. State,* 74 Neb. 471, was a prosecution for murder.   One who was disqualified by reason of having been convicted of a felony sat as a juror.   In the opinion by Sedgwick, J., it is said: "Great latitude is allowed the defendant upon the *voir dire* examination to enable him to ascertain whether there is any ground for objecting to the juror.   He cannot waive an objection of this nature, and, after taking his chances of an acquittal before the jury selected, insist upon an objection which he should have raised upon the impaneling of the jury, and, if he makes no effort to ascertain whether a juror offered is qualified to sit, he must be held to have waived the objection.   Any other rule would introduce uncertainty into a jury trial which would be intolerable."   This is followed in *Reed v. State,* 75 Neb. 509.

In the case at bar no objection was made at any stage of the trial.   The list of names on the panel of regular jurors was of record and within the reach of plaintiff and his counsel before the trial.   A reference to this list, which under the statute could not at any time include more than 24 jurors for each judge sitting with a jury, would at once have disclosed that the jurors complained of were not regularly upon the panel.   Having failed to interpose any objection or complaint until after he had tested the temper of the jury and received an adverse verdict, the plaintiff waived the irregularity, and is bound by the verdict.

Barnes and Fawcett, JJ., concur in this dissent.