DURANT v. KAUFFMAN, Marshal, etc.

DAVENPORT v. SAME.

MITCHELL v. SAME.

DILLON v. SAME.

1. Corporation, municipal: TAXATION OF LANDS AND SUBURBAN PROP-
ERTY. The rule recognized, that lands lying within the limits of a
city, which are used for agricultural purposes, and derive no benefit
from the municipal expenditures, are not subject to taxation.

2. —— In determining whether lands of a rural character, situated
within the limits of a city, are benefited by the municipal govern-
ment, the purposes for which they are held is a controlling fact
to be considered.

3. —— If held as city property, with a view to putting them on the
market as such when they shall reach a value corresponding with
the views of the owner, they should be regarded as subject to
municipal taxation.

4. —— So, property of a suburban character remote from the center
of the city, embracing several acres occupied for residence and
improved with gardens, vineyards, lawns, etc., is subject to such
taxation.

*Appeal from Scott District Court.*

WEDNESDAY, JUNE 5.

THESE are actions in chancery, prosecuted by the several
plaintiffs, to restrain the city of Davenport from the
collection of certain municipal taxes assessed and levied
upon certain real estate within the corporate limits of the
city. Decrees were rendered by the district court in each
case restraining the collection of the taxes upon the prop-
erty of the plaintiffs, involved in the respective actions.
The defendants appeal. The facts of the several cases
appear in the opinion.

*Bills & Brock* for the appellants.

*John F. Dillon, pro se.*

*Putnam & Rogers* for the other appellees.

BECK, Ch. J. — I. The same questions of law are involved in all of these cases. They relate to the right of the city to tax real estate within its limits which, it is claimed, partakes of a rural or suburban character, and is not, for that reason, subject to municipal assessments. The same legal principles are applicable to, and must determine each case. The facts relating to the situation and character of the respective real estate involved in the different actions are not identical, though closely resembling. In the application of the law to the several cases the differences and distinction in the facts must be carefully observed. The cases may, most conveniently, be considered in one opinion, the principles of the law applicable in common to all, being first discussed and settled, and then applied to the different state of facts as developed by the evidence in each case.

II. The mere fact that lands are included within the limits of a muncipal corporation does not authorize their taxation for general city purposes. Under certain conditions they are exempt therefrom. These conditions are such that the property proposed to be taxed derives no benefits from being within the city limits. This is the rule recognized by the various decisions of this court upon this subject. *Morford* v. *Unger*, 8 Iowa, 82; *Langworthy* v. *Dubuque*, 13 id. 86; S. C., 16 id. 271; *Fulton* v. *Davenport*, 17 id. 404; *Buell* v. *Ball*, 20 id. 282; *O'Hare* v. *Dubuque*, 22 id. 144; *Deeds* v. *Sanborn*, 26 id. 419; *Deimon* v. *Fort Madison*, 30 id. 542. There is no difficulty in deducing the rule as stated from the adjudications,

but there is, on account of its general terms, great difficulty in applying it to actual cases. The difficulty, however, arises in determining what are the benefits which subject lands to municipal taxation, and when they attach, and is really a difficulty as to facts and not as to the law. We do not not understand, from the arguments of the respective counsel, that the rule above stated is denied by counsel on either side of the cases. We are not called upon to support it by argument, or an examination of the cases heretofore decided by this court. Neither are we required, in the view we take of the facts of the cases before us, to discuss several collateral questions presented by counsel as to the effect of platting the lands into city lots, and subsequent vacation of the plats thereof, and as to the burden of proof, in case of lands not platted, whether the burden lies upon the city to show that they are liable for taxes, or upon the owner to show that they are not benefited by being within the city, and are not therefore, taxable. These and other questions do not, demand discussion.

III. To enable us correctly to apply the rule above stated, we must consider and determine the character of the benefits which will render lands within a city liable to general municipal taxation. These are not such as attach to all lands near to a city or large town, whereby they are rendered more valuable, but are such as accrue to the lands considered as city property. Lands lying contiguous or near to a city, though incapable of any use except for agricultural purposes, are, nevertheless, of greater value on account of their location than those more remotely situated. Convenience to a market, etc., etc., adds to their value. Therefore lands within a city kept and alone used for agriculture, and not capable of being used as city property, and not demanded for that purpose, nor possessing a value based upon their adaptation for the purposes of dwellings or business, cannot be considered directly benefited by

Durant v. Kauffman.

the fact of their being within the city limits. Such lands should not be taxed for general municipal purposes. In determining the benefits accruing to such lands, a controlling fact to be considered is the purpose for which they are held. If held as city property, to be brought upon the market as such, whenever they reach a value corresponding with the views of the owner, they ought to be taxed as other city property. There would neither be reason nor justice in permitting a proprietor of a large tract of land within a city to hold it for an opportunity to bring it into the market as city lots, and for no other purpose, under the pretense that it is agricultural lands, thus escaping taxation for the general improvement of the city, the very thing which will bring his lands into market, and thus add greatly to their value — a direct benefit to the owner.

In such a case the general improvement of the city; the building of streets near or in the direction of the lands so held; the construction of water-works, public buildings, etc., etc., by which the prosperity of a city is advanced and an invitation to population is held out, all bestow direct benefits upon the owner of such property. The lands, being a part of the city in fact, and held by their owner for the increase in value which he expects, because they are city lots, are benefited by the municipal government, and share in the benefits derived by the expenditure of revenue raised by taxation. If property be so held, within a city, whether it be subdivided into lots and streets thereon, or dedicated to public use, or be inclosed and cultivated as agricultural lands, it ought to be subject to general municipal taxation. This result is directly deducible from the rule established by the decisions of this court.

IV. When land within the city is used for the purpose of dwellings or business, ordinarily it cannot be claimed that it is free from taxation as city property. If it be far from the improved streets, it, nevertheless, will be charged with the burdens common to other property. Should a

citizen occupy for his residence one lot of twenty-five feet front in the most remote quarter of the city, and upon the streets contiguous thereto no improvements have been made, upon what ground could he claim exemption from municipal taxation? His claim would be answered by the simple consideration of the facts that cities are established for the very purpose of people living together in communities and, by uniting their interests under a common government, increasing their general and individual prosperity; that like all other things human they must have a beginning; that such a beginning is usually an inconsiderable population, with territory sufficient for its probable increase, and that, because a part of the land included within the limits of a city is not now wanted for actual occupation, it cannot be deprived of all the benefits of the city and released from all its burdens. Taxation must precede improvements and the citizen must look to the municipal government for the benefits to which he is justly entitled in the way of improvements. He cannot, in case that government fails to improve the streets leading to his property, or to establish and open such other streets as his wants require, or to do other things which his interest demands, separate himself from the body of the citizens and refuse to contribute, in the way of taxes, to the general good of the whole city.

Now the case is no different if the citizen, instead of owning one-tenth of an acre and a humble dwelling thereon, occupies twenty acres for the purpose of his residence, and surrounds himself with lawns, gardens, orchards and groves. His possession is used for the purpose of a dwelling; as a citizen he is entitled to the same protection from the city government as though he occupied but twenty-five feet in the heart of the city. If the city refuses or neglects to make improvements, which his convenience requires or to extend the protection his safety demands, his remedy is not by freeing himself from municipal burdens.

If he requires and demands no such improvements and protection he cannot complain.

That there are benefits flowing from the city government which are shared by a citizen occupying, as a place of residence, such a tract of land within the municipal limits, there can be no doubt. The police power of the city is exerted for his protection in maintaining good order, and, should he be threatened by the evil disposed, or should crimes be committed against his person or property, his safety is secured and the offenders are brought to punishment by the municipal ministers of the law. It may be true that the citizen residing in a remote quarter of the city does not so frequently require for his protection the special exercise of this police power as one who lives in the more populous portion, but that he does enjoy some benefits in that way cannot be questioned. The law will not enter into an inquiry as to their extent, but will hold the citizen liable to municipal burdens if he enjoys benefits in any degree from the city government.

V. We will proceed to the application of these principles to the cases before us. A discussion of the evidence, as to the character of the several tracts of land in question, is not demanded; we will, therefore, briefly announce the conclusions we have reached upon this point, after a careful consideration of the record.

The lands owned by plaintiffs, Durant and Mitchell, are inclosed and cultivated as farming lands, or used as pasture, the last named probably is not wholly inclosed. Durant's tract contains a little more than fifty acres; Mitchell's eighty. They have not been laid off and platted into city lots, and no streets have been extended through them. City streets, however, have been opened up to the lands, and upon two sides of each tract are streets that have been more or less improved by the city. On the south and east, and partly on the west of Durant's land, are laid off city lots, upon which are quite a number

of small dwelling-houses. This region of the city is sparsely populated. One block south of this land is a street upon which the city horse railroad runs for some distance west of the land. A church and cemetery are upon a block adjoining the tract. The populous portion of the city lies east, and south of east, of the property. The land of Mitchell lies in a north-westerly direction from the center of business and perhaps of population of the city. West of and adjoining it is an addition to the city, within the corporate limits, which contains a population of six hundred people. The land laid off into this addition is much the same in character as that of plaintiff Mitchell. There is no great demand for lots in the immediate vicinity of the lands of Durant and Mitchell, and the prices which they bear are not such as to induce the plaintiffs to bring their land into the market. But the evidence convinces us that their lands are held as city property awaiting such advance in the price of city lots as the proprietors may esteem an inducement to plat and offer their respective tracts for sale in that way. It is made plain by the evidence that neither tract is kept by the owner for farming or pasture lands; that the use in that way which is made of them is a mere incident, and not the purpose for which the property is held. We have no question that the owners and the whole world regards these lands as city property, and not as farms, and that they are reserved as an investment to be brought into the market as city property, when they well command a sufficient price as such to satisfy their owners. We are of the opinion, which is well sustained by the evidence, that this property is valued by the owners because of its character as city property and could now be sold as such. We do not intend to be understood as saying that it could be sold to those who want it for building thereon, but that if it should be properly laid off into lots, purchasers could be found therefor at some

prices. We are well satisfied that the character it sustains as city property increases its present value.

The foregoing considerations bring us to the conclusion that the lands of Durant and Mitchell are legally chargeable with general city taxes, and that the judgments of the district court relieving them therefrom is erroneous.

VI. We come now to consider the character and situation of the property of Davenport and Dillon, and apply the rule above announced thereto. The land of the first-named party contains more than seventeen acres, and of the last over sixteen. They are occupied as the residences of the respective owners, and improved with gardens, orchards, vineyards and lawns. Dillon's is bounded on the west by the city limits, on the north by the addition above referred to as containing six hundred population, on the east by Davenport's property involved in controversy, and south by the property of Durant, above described. Davenport's land is bounded on the north by the addition aforesaid, on the east by city lots, one only adjacent thereto having a dwelling-house thereon, and on the south by Durant's property. A street is upon the north of both Dillons and Davenport's lands and a street or road is upon the south. A city street runs for about one-third of the distance along the east of Davenport's land. A street and alley are also laid out directly east from it. The city has made expenditures, to a limited extent, in improving some of these streets.

The lands in question, owned by Davenport and Dillon, being within the limits of the city, and subject to its police jurisdiction, are directly benefited thereby, in view of the fact that they are used and kept solely for the purposes of dwelling places. How this benefit accrues we have pointed out. In our opinion they are also benefited by the expenditures made by the city in improving the streets adjacent and leading to this property. We would not limit the

benefits to be taken into consideration, to those resulting from improvement of the streets adjacent to the property, but would take into account the improvements upon the streets leading thereto, thus increasing the facility of access to the houses of the plaintiffs. These benefits demand that plaintiffs should share the burdens of the city in sustaining its government. The fact that·lands similarly situated, without the city limits, are in a like manner benefited by street improvements in the city, is no foundation for an argument against our conclusion. Doubtless every farmer who hauls his grain to market at Davenport, and every stranger who visits the city, is, in some degree, benefited by the expenditures of the city, in constructing and repairing the streets. They are relieved from the burdens of contributing to such expenditures, because they own no property in the city. Plaintiffs are the owners of property therein, and for that reason must contribute for the construction and improvements of the streets, the benefits of which farmers and strangers share with them. The obligation of plaintiffs to bear the proper burdens for street improvements is acknowledged by the payment of road taxes in the city. This, they contend, relieves them from further liability. We think not. As we have before intimated, the law will not nicely balance the benefits and burdens, and measure the liability for the taxes, by the exact advantages derived therefrom. If the plaintiffs are benefited by the city government, they must contribute to its support, and they will not be discharged upon the payment of just such taxes as are expended for their benefit. It would be a rule extremely unsafe and difficult in its application to cities, to hold that the obligations of tax payers are limited by the benefits resulting to them from the expenditure of the taxes, and that they are required to pay only those from which they derive advantage.

It is our opinion that the district court erred in its judgment in each of the cases, restraining the collection of the

taxes in question.   The petition of the respective plaintiffs will be dismissed and a decree to that effect will be entered here.

COLE, J., dissenting.

Reversed.

COLE, J. — However cordially I might agree with the conclusion reached by the foregoing opinion, if the question was *res integra*, I cannot free myself from the conviction that the rules and analogies derived from the previous decisions of this court, when applied to these cases, lead to the same decision as made by the district court. It seems to me, therefore, that obedience to the doctrine of *stare decisis* requires us to order the judgments affirmed. · For this reason, I dissent from the foregoing opinion.