Turner v. Althaus.

CHARLOTTE TURNER, APPELLEE, v. A. C. ALTHAUS, TREASURER, THE CITY OF OMAHA, AND OTHERS, APPELLANTS.

1. **Taxes:** ACTION TO RECOVER. An action at law is the proper remedy to recover taxes illegally paid, when the same have been paid under protest, to prevent distress and costs.

2. ———: POWER OF THE LEGISLATURE. The power to arrange and distribute the administrative functions of government, and to change the same from time to time, as the public exigencies may require, belongs exclusively to the legislature, and this includes the authority to incorporate towns and cities.

3. ———: ———: The taxing power is vested in the legislature, and it is exclusively within its province to apportion and direct the assessment and collection of taxes.

4. **Constitutional Law.** The court cannot pronounce an act of the legislature void merely because it may be imperfect or impolitic, or for any supposed inequality or injustice in its operation, if it be upon a subject-matter fairly within the scope of legislative authority. To bring the validity of a legislative act within the control of the judiciary, it must be clearly subversive of the constitution.

5. ———: PRIVATE PROPERTY. The private property of a citizen cannot, by the exercise of legislative power in any form, be taken from him and given to another, or to a corporation. Such act would be judicial, depriving the citizen of his property without due process of law.

6. ———: CITIES OF THE FIRST CLASS. Section twenty-four of the "act to incorporate cities of the first class," approved, March 28, 1873, authorizing and empowering the mayor and council of such cities to levy and collect taxes for general purposes, is not unconstitutional; and under this law, all property within the limits of a city as incorporated, which is taxable according to the laws of the state, is subject to taxation by the municipal corporation for general purposes.

7. ———: ———. The court cannot classify the property within the limits of such city or tax district, into such as shall be taxable, and such as shall be exempt from taxation. The judiciary can only determine as to the constitutionality or unconstitutionality of a legislative act.

Per LAKE, CH. J., and MAXWELL, J.

8. **Practice.** DEMURRER. When a demurrer only specifies as ground therefor, that the facts stated in the petition are not sufficient to constitute a cause of action, the court, in its decision of the demurrer, should confine itself to that single objection.

9. **Misjoinder of Causes.** And even if there be a misjoinder of distinct causes of action, if the defendant do not object, it is not within the province of the court to do so.

10. **Legal and Equitable may be joined, when.** Legal and equitable causes of action may be properly joined whenever they fall within Sec. 87 of the Code of Civil Procedure. This section of the statute is not in conflict with Sec. 9, Art. VI, of the constitution, by which district courts are given "both chancery and common law jurisdiction."

THIS was an action brought by Charlotte K. Turner, to restrain the city of Omaha from collecting taxes assessed upon the lands of the plaintiff, lying within the incorporate limits of the city of Omaha, but remote from the business or residence portion of said city, not subdivided into blocks and lots, and used exclusively for agricultural purposes. Also, to recover from said city certain of said taxes paid by the plaintiff.

To the petition a general demurrer was interposed, which was overruled and a decree entered for the plaintiff. Defendants appeal.

*John M. Thurston*, for appellant.

I. The decision of the court below was based solely upon the case of *Bradshaw v. The City of Omaha*, 1 Neb. 16, and if the opinion announced in that case can be supported by reason, common sense, or the authorities, and is to stand as the law of the land, then the cause of action set out in the petition is a good one, and the decision of the court below should be affirmed.

It is necessary, therefore, in order to secure the reversal for which we contend, to attack directly and squarely the soundness of the law laid down by this court in the last named case. We do this confidently and fearlessly, believing that it is only necessary to point out the fallacy of the argument in the opinion delivered by MASON, Ch. J., cite the overwhelming array of authorities in opposition thereto, and suggest the dangerous usurpation therein made, by the judiciary, of the constitutional powers belonging exclusively to the legislative branch of the government, to convince the court that that decision is wrong, and should be over-ruled

It is but justice to state that the decision in *Bradshaw v. Omaha*, was not concurred in by LAKE, J., whose decision in the court below was therein reversed.

II. It is true that the courts of Kentucky, and of Iowa have passed upon this question, and have come to conclusions the same as those reached in *Bradshaw v. Omaha*, the latter case indeed following and resting solely upon them. The courts in those cases arrogate to themselves the power of trying as a matter of fact the questions as to whether or not land included within the limits of a city is sufficiently benefitted by the municipal government to authorize the levy of taxes upon it.

Thus, the power of establishing taxation districts is taken away from the legislature, and assumed by the judiciary. Thus it becomes a question, which the municipal authorities are bound to determine at their peril, whether any particular lot or tract of land is used for city or agricultural purposes, and it becomes an extremely delicate and important question whether the man who resides upon an acre tract, cultivated as a garden, is to be taxed or not.

It becomes important, too, to know, if it be ten rods or a hundred rods from the post-office, whether it needs police protection, and is benefitted by the fire department, and as the facts may be in each particular case, so must taxes be levied or the land escape their payment.

Thus will a municipal corporation be involved in a vast multitude of vexatious litigations. Litigations, too, which will be never ceasing, as each year the status of property is changing, and what to-day is purely agricultural lands may next year become necessary for residence or business purposes, and *vice versa.*

III. The decision in *Bradshaw v. Omaha* was based somewhat on the allegation of the bill, which upon demurrer stood as confessed, that the land in that case had been brought by amendment of the charter within the incorporate limits against the consent of the owner, not because it was necessary for municipal purposes, but because the corporation, having incurred a large debt, wanted more property to tax.

The court was evidently influenced somewhat by the English idea of municipal corporations. In England a municipal charter is regarded as in the nature of a contract. A city cannot be chartered without its consent, so its assent, either express or implied, is necessary to the legality of any amendment of its charter. The charter there is presumed to confer special and exclusive rights which are a consideration for the supposed contract. In this country the contract theory is exploded. A municipal corporation is merely a political subdivision of the state. A charter is a public act which the city cannot refuse to accept or act under. Obligations are imposed, and powers conferred, which must be met and exercised by the corporation. Among these are the levy and collection of taxes for the support of the local government.

The sovereign taxing power of the state is conferred *pro tanto* upon the municipal authorities, subject only to the limitations as to district, amount and manner of levy provided by the legislature.

IV.   All sovereign power is vested in three branches of government—the executive, legislative and judicial. Each within its own proper sphere is supreme, and cannot be controlled by the others.

V.   The power of the legislature to legislate on all matters is supreme and without limit, except where controlled by the constitution, and where the constitution is silent upon any particular subject, the legislature has as much power over it as has the Parliament of Great Britain.   Potter's Dwarris on Stat. & Const., 61. *S. & E. R. R. Co. v. Cooper*, 33 Penn. St., 282.   *Ex-Parte N woman*, 9 Cal., 503.   *Fletcher v. Peck*, 6 Cranch, 428.   *People v. Draper*, 15 N. Y., 545.   1 Kent's Commentaries, 488.   *People v. Denniston*, 23 N. Y., 247.

VI.   The legislature has the sole power to determine what taxes shall be levied, for what purposes, what property shall be taxed, and in what proportion; and, also, to fix or establish a district for taxation pur poses, and may levy such tax either *per capita*, on property specially benefited, or upon all real property within the district taxed.   *Providence Bank v. Billings*, 4 Peters, 514.   *McCulloch v. Maryland*, 4 Wheaton, 428. *Scovill v. Cleveland*, 1 Ohio St., 138.   *Gordon v. Cornes*, 47 N. Y., 608.

VII.   All Omaha charters provide that taxes for general purposes shall be levied upon all the property in the city.   General Statutes of 1857, 58, 61, 65, 69, 70, 71 and 73.   The legislature has therefore established a

district and caused a tax to be levied on all property therein.

VIII. The legislature may extend the corporate boundaries of a city so as to include all adjacent property, with or without the consent of the owners of such property, and may compel such property to pay taxes for indebtedness either accrued or to accrue, even though not beneficial to such property. Dillon on Munic. Corp., 80. *Layton v. New Orleans*, 12 La., 515. *People v. Hill*, 7 Cal., 97. *St. Louis v. Russell*, 9 Mo., 507. *St. Louis v. Allen*, 13 Mo., 400.

IX. The constitutional prohibition against taking private property for public purposes without compensation, refers solely to the exercise of the right of eminent domain, and not in any event to the exercise of the taxing power. *Gilman v. Sheboygan*, 2 Black, 510. *People v Mayor of Brooklyn*, 4 Comst., 419. *Town of Guilford v. Supervisors*, 13 N. Y., 143. *Scovill v. Cleveland*, 1 Ohio State, 135. *Hollenbeck v. Hahn*, 2 Neb., 400. *Booth v. Woodbury*, 5 Am. Law Reg., 202. *Howell v. Buffalo*, 37 N. Y., 267. Potter's Dwarris on Stat. and Const., 404.

*B. E. B. Kennedy*, for appellee.

I. This case is fully sustained by the judgment of this court in the case of *Bradshaw v. The City of Omaha*, 1 Neb., 16, and unless the court feels constrained to reverse that judgment, the appellee need go no further than to cite that case and the authorities upon which it rests. The counsel for the appellants concedes that this case rests upon the same principles and a similar state of facts with the Bradshaw case, but contends that that decision is contrary to law and reason, and should be reversed.

The able and exhaustive judgment of the court in that case—the character of authorities cited in its support, and the fact that the very salutary principles of law and common right there enunciated have been since cited with approval, and followed by more recent decisions of the ablest jurists, both state and federal, in this country, would seem to render it a work of supererogation to do more than call attention to them.

II. Many nice distinctions have been drawn between taking of private property for public use by right of eminent domain, and taxation, but except as to the mode of compensation, there is no substantial distinction resting in law or common justice. *The People v. The Mayor of Brooklyn*, 4 Com., 419. Sedg. on Constitutional Law, 647.

To sustain either, there must be a public necessity, and although the legislative will or discretion is generally decisive of such necessity, and generally not reviewable, yet the courts may review such action to the extent necessary to determine whether it is obnoxious to constitutional limitation, repugnant to public policy, or subversive of the natural rights of the citizen.

If the legislative will is the end of the law, it may include the entire territory of the county within the city limit for taxation for general municipal purposes.

The court is not absolutely concluded by the opinion of the legislature as to the use or necessity for which the property is taken. Its judgment will be respected by the court unless the use be palpably private or the necessity plainly without reasonable foundation. Dillon on Municipal Corporations, 450, sec. 465, and notes 2 and 3.

III. It is obnoxious to the constitution, because it takes private property for public use without just com-

pensation. *Buel v. Ball*, 20 Iowa, 282. Dillon on Mun. Cor., 633 and 634, and notes 1 and 2.

And it makes no difference whether it is taken by the original act of incorporation or by amendment enlarging the corporate limits.

The theory of compensation to the owner of the property within the municipal boundaries by reason of the protection or benefits derived from the municipal government, applies to the property used, or occupied, or required for city purposes, and is co-extensive only with " that point or line where it ceases to operate beneficially to the proprietor in a *municipal point of view*." *Langworthy v. Dubuque*, 16 Iowa, 271. *Fulton v. Davenport*, 17 Id., 407. *Durant v. Kauffman*, 34 Id., 194. *Cheaney v. Hooser*, 9 B. Monroe, 330. *Sharp v. Dunavan*, 17 Id., 223. *Maltus v. Shields*, 2 Met. (Ky.), 553. *Covington v. Southgate*, 15 B. Mon., 491. *Arbegust v. Louisville*, 2 Bush. (Ky.), 271. Dill. on Corp., 633, 634, and notes 1 and 2.

Our legislature seems to have taken the same view, and have placed a construction on this statute. Gen. Stat., 109, 110, 1873.

*G. W. Ambrose*, on behalf of parties interested in similar questions pending in the circuit court of the United States for Nebraska, by consent of the court, argued in favor of sustaining the judgment below, and filed the following brief:

I. Every person who places his property within the jurisdiction of the state assents, by that act, to the universally conceded principle that the people, in their collective capacity, reserve the right to resume such portions of the property as may be necessary for the public use. This may be done in two ways only, by taxation and eminent domain, both of which rest on the same

foundation. In either, compensation must be made to the citizen, in money, or the protection assured by the government to that property, or "in the increase of the value of his possessions by the use of which the government applies his money raised by the tax."

In other words, compensation must follow—result in the one case as in the other. If no compensation, either in the protection of life, liberty, or property, is the result from taxes levied and enforced against the citizen, what right has the state to exact my money, which is property, for the public use, under the guise of taxation, any more than it would have to exact my farm, for the benefit of my neighbor, even with compensation, or for a public use, without compensation, under the guise of eminent domain? If either may be done, all may. But say you, the legislature supposes compensation as the result of taxation. But what is the fact? May it not be enquired into. Suppose the legislature should say, the building of a railroad across my farm shall be deemed compensation for the land taken, in that it affords me increased facilities for trade and commercial intercourse with the world. Is not the supposition in one case equally as good as the other? Would the case put stand the test of judicial scrutiny? Would it not be the substitution of "legislative supposition" for compensation in protection in the one case and money in the other? If the equivalent, as a matter of fact, is wanting in either case, the court should not hesitate to brush aside the *supposititious* "will of fluctuating and hasty legislation."

"The taxing authority is, after all, but one arm of that tremendous power of eminent domain, at the foot of which, so far as uncontrolled, every citizen lies prostrate; and the consequences of the earlier decisions leaving this engine in the hands of unrestrained legislative authority, seem to have awakened that conservative jealousy of

power which never lies long dormant in the breast of our people. Certain it is, that the more recent constitutions and the more recent judicial decisions show a disposition not to abandon the taxing power to the often ill regulated and despotic will of our fluctuating and hasty legislation." Such are the strong words of that able writer, Mr. Sedgwick, in his treatise on statutory and constitutional law, page 647. ·

But it is said that it is not within the judicial function to control or circumscribe the legislative discretion. Suppose an extreme case: There being·no constitutional inhibition upon the power to tax, the rate of taxation, the subjects or purposes of taxation, and thus unrestrained this "legislative discretion" should assume to lay a tax for some suppositious purpose equal to the value of the entire property upon which the tax was laid; need I stop to discuss such a proposition and refute by argument that it would be beyond judicial control, because the legislative will has already acted upon the subject, and therefore it is the end of the law?

It is no longer discretion when the legislature has passed an act which contravenes a principle of the organic law or a "common right," but it is a want of power, and therefore becomes a wrong, which it is the especial function of the judiciary to right.

The legislative power to prescribe the rule, subject, and purposes of taxation is no higher than that of the same body to prescribe the uses of the right of eminent domain. The power to do both resides in the legislative department to whom the delegation is made.

"But it may be restrained by the judiciary when its limits have been exceeded or its authority has been abused or perverted." *Kramer v. C. & P. R. R. Co.,* 5 Ohio, St., 149. In *People v. Smith,* 21 N. Y., 597, there is a distinct recognition of the doctrine for which I am contending—that it does not rest solely with the

legislature to say whether a just compensation has been made or provided for, or whether the use for which the tax is laid, or property authorized to be condemned, is a public one or not, but that if the policy of the view ·taken by the legislature is contrary to "common right," or the use be not a public one, then the legislative act ceases to be due process of law, and the duty of the court is plain to so ·pronounce. *Wilkinson v. Leland*, 2 Peters, 658. *Jackson v. Frost*, 5 Cowen, 346. *Jackson v. Lyon*, 9 Cowen, 664. *Hampshire v. Franklin*, 16 Mass., 76. *Taylor v. Porter*, 4 Hill, 140.

"The legislature, in the plenitude of the taxing power, cannot have constitutional authority to exact from one citizen, or even from one county, the entire revenue for the whole commonwealth. Such an exaction, by whatever name the legislature may choose to call it, would not be a tax, but would be undoubtedly the taking of private property for public use." Cooley on Taxation, 178. *Lexington v. McQuillan's Heirs*, 9 Dana, 517.

Taxation is here recognized as one form of taking private property for public use, and in the view of the learned author and judge, because the legislature has seen fit, out of its abundant "discretion," to call it a tax, does not of necessity make it such, but that the courts shall be the final arbiter between the citizen and the legislature.

II. These lands were brought into the limits of the city and subjected to the burden of taxation at the same time as the lands in the Bradshaw case.

That they are agricultural lands only cannot be questioned, and the question simply is, are they taxable for the ordinary purposes of the city government.

There can be no difference on principle or authority, whether the lands were originally within the limits, or brought in afterwards by some act of extension.

The court has passed upon the latter question in *Bradshaw v. Omaha*, 1 Neb., 16. And the authorities are not wanting in states where this question has been raised, since the decision of this court to sustain the ruling there made. *St. Louis v. Russel*, 9 Mo., 512. *Wells v. Weston*, 22 Mo., 384. *Cheaney v. Hooser*, 9 B. Mon., 345. *Covington v Southgate*, 15 B. Mon., 491. *Sharpe v. Dunavan*, 17 B. Mon., 230. *Arbegust v. Louisville*, 2 Bush (Ky.), 271. *Morford v. Unger*, 8 Iowa, 82. *Langworthy v. Dubuque*. 13 Io va, 86. *Fulton v. Davenport*, 17 Iowa, 404. *Durant v. Kouffman*, 34 Iowa, 194.

GANTT, J.

The plaintiff alleges that she is the owner of twenty-four and three-fourths acres of land situate " *within the incorporate limits of the city of Omaha* "; that the same is not laid off into lots, and is unoccupied and unsettled upon, except for agricultural purposes. Farnham street passes along the south side of the land, and it is alleged that the same was so extended without the plaintiff's consent and against her protest. The petition contains two causes of action, and in the first it is complained that the land was assessed and taxed for general city purposes, for the year 1874, viz.: for general fund, sinking fund, and school fund; that she paid all said taxes under protest to prevent a distress and sale of property; and it is alleged that said taxes were illegally and unlawfully assessed and levied on the said land, and therefore she prays that the " defendant, the city of Omaha, be ordered by the court to refund and pay " to her all the taxes so paid for the year 1874. In the second cause of action it is alleged that the same land was assessed and taxed for general city purposes for the year 1875, viz.: for general fund, sinking fund, and school

7

fund; that said assessments are unlawful; that the land was placed upon the delinquent list for said year, and returned to the county treasurer, who advertised and was about to sell the same for the payment of said taxes for the year 1875. The plaintiff therefore prayed an injunction to restrain the sale of the land. To this petition the defendants demurred on the ground that the facts stated in the petition are not sufficient to constitute a cause of action. The demurrer was overruled, and a decree was rendered for the plaintiff as prayed in the petition.

As the action is one exclusively in equity, it may be observed in the first place, that the two counts in the petition set forth distinct and independent causes of action; the one is for the recovery of taxes alleged to have been illegally paid under protest for the year 1874 to prevent distress and costs, and the other is for an injunction to restrain collection of taxes assessed for the year 1875, on the ground that they were illegally assessed and levied.

In the first cause of action A. C. Althaus is made a party, but the facts stated therein show clearly that he has no interest in the matter complained of, and cannot under any circumstance, be made liable in such action. Again, from the statement of facts it clearly appears that the first count not only states a distinct cause of action, but also in this cause of action the plaintiff has an adequate and complete remedy at law; and to merge such cause of action into a purely equitable action, and thereby destroy the distinction between law and equity, must necessarily subvert the jurisdiction of the courts given by the constitution, which declares that they 'shall have both chancery and common law jurisdiction." It is said that "to assume jurisdiction in equity of a cause which can as well be determined in an action at law is not to do equity, but to administer law in a form not legal. It would not be giving relief, but simply usurp-

ing power." And Brightly, in his treatise on Equitable Jurisprudence (460), says: "In general, when the plaintiff can have a remedy at law, as effectual as the one he seeks in equity, and that remedy is direct, certain, and adequate, a court of equity has no jurisdiction, and therefore a demurrer to the jurisdiction will be sustained." Adams, in his treatise on the doctrine of equity, says that if the redress is sufficient at law, there is no jurisdiction in equity, and that the cases in which jurisdiction in equity attaches, may be conveniently divided under two heads, viz.: 1. "Where the courts of ordinary jurisdiction cannot enforce a right; and 2. Where they cannot administer it." *Bennet v. Butterworth*, 11 How., 675. Story's Eq. Pl., §§ 10, 34. 9 Foster, 442. However, it is not enough that there is a remedy at law: "it must be plain and adequate, or in other words, as practical and efficient to the ends of justice and prompt administration as the remedy in equity." *Boyce Ex_cr's v. Grundy*, 3 Peters, 215. But the doctrine seems well settled that an action at law is the proper remedy to recover back taxes illegally levied, when the same were paid under protest, to prevent distress and costs. *Allen v. Burlington*, 45 Vt., 202. *Erskine v. Van Arsdale*, 15 Wallace, 75. *Shoemaker v. Grant Co.*, 36 Ind., 175. It is an adequate and complete remedy in such cases, and therefore, I think that under the jurisdiction of our courts as fixed by the constitution, the first count contitutes no cause of action in equity and was improperly so brought, and the demurrer to it should have been sustained. It is very probable that the plaintiff based the right of action in equity upon the case of *Sturges v. Burton*, 8 Ohio St., 218, in which it is said that "by the provisions of the code the plaintiff may unite in one action all causes of action arising from the same transaction or transactions connected with the same subject of action, and this includes causes of action legal and

equitable, *ex-contractu* and *ex-delicto*." But the plaintiff's first cause of action does not even come within the rule laid down in the above case, for the reason that her two causes of action do not arise from the same transaction, as appears from what has already been said. But it must be observed that the case of *Sturges v. Burton* was decided in the year 1858, and the constitution then in force in that state was adopted in 1857, and by Art. XIV, section two, it is provided that the supreme court " shall have original jurisdiction in *quo warranto, mandamus, habeas corpus* and *procedendo*, and such appellate jurisdiction as may be provided by law." Section four provides that the "jurisdiction of the courts of common pleas, and of the judges thereof, shall be fixed by law," and section six provides, that " the district court shall have like original jurisdiction with the supreme court, and such appellate jurisdiction as may be provided by law." It will therefore be seen that the decision referred to cannot be authority in determining the constitutional jurisdiction of the courts in our state, for the reason, that under the constitution of the state of Ohio, with the exception of cases of *quo warranto, mandamus, habeas corpus* and *procedendo*, the jurisdiction of the courts is not fixed by the constitution, but must be determined by the legislature. In this regard there is no limit upon the legislative authority, and therefore the legislature may abolish either law or equity practice, and merge the two jurisdictions in the one or the other, or may unite in one action any number of different causes of action without any regard to the subject matter of the action. This legislative power does not exist under our constitution, which fixes the jurisdiction of the courts in respect to law and equity.

But another important question is, whether the land described in the petition is or is not exempt from taxation for city purposes.

As it is admitted by the pleading that the land "lies within the incorporated limits of the city of Omaha," the question is fairly raised by the second cause of action stated in the petition and the demurrer thereto, and in the discussion of this question it may be of some advantage, in the first place, to advert to some general principles in the administrative policy of the government. The powers of the state government are divided into three distinct departments—the legislative, executive and judicial, and no person or collection of persons, being one of these departments, can exercise any power properly belonging to either of the others, except expressly so authorized by the constitution. Under this division of distinct departments of the government, the apportionment of power to one department will of itself imply an inhibition of its exercise by the others, and according to this rule of apportionment, it is unquestionably the province of the legislature to arrange and distribute the administrative functions, committing such portions as it may deem suitable to local jurisdictions, and retaining others to be exercised by officers appointed by the central power, and to change such arrangements from time to time as the public exigencies may require; and this exercise of power includes the legislative authority to pass laws for the incorporation of towns and cities, for the power to pass such laws is not derived from the directions contained in the constitution, in relation to the organization of cities, but results from the grant of legislative power of the people to the legislature. *People v. Draper*, 15 N. Y., 545. *Bank of Chenango v. Brown*, 26 N. Y., 370. *Sanborn v. Commissioners of Rice Co.*, 9 Minn., 176. *Butler v. Supervisors of Saginaw*, 26 Mich., 27.

Again, by this apportionment, the taxing power is vested in the legislature, and therefore it is exclusively

the 'province of the legislature to apportion and direct the assessment and collection of taxes; and this power of taxation may be exercised to the full extent of the public exigency. It is said that taxation differs from the power of eminent domain in this, that it has no thought of compensation by way of return for that which it takes and applies to the public good, further than all derive benefit from the purposes to which it is applied; in other words, that " the support of government, and other objects of public utility promoted by taxation, are supposed to return to the individual the same which has been taken from him as his share of the public burden." *Washington Avenue,* 69 Pa. St., 363. *Wynehamer v. The People,* 13 N. Y., 404. *People v. The Mayor, &c., of N. Y.,* 4 Comst., 419. A tax is defined as "a charge, apportioned either among the whole people of the state, or those residing within certain districts, municipalities, or sections." *Oliver v. Washington Mills,* 11 Allen, 274. And as the responsibility of passing laws devolves exclusively on the legislature, whether the taxing power be exercised by it wisely or unwisely, justly or unjustly, or in some instances it may be abused, yet the "interest, wisdom, and justice of the representative body, and its relations with its constituents, furnish the only security against unjust and excessive taxation, as well as against unwise taxation." It is universally admitted that in the imposition of taxes, exact and critical justice and equity are not attainable, and hence it is not deemed essential to taxation that it, should be levied according to the strict rules of abstract justice. Therefore, if the legislature keep within its proper legislative sphere of action, and do not impose burdens under the name of taxation which are not taxation in fact, its decisions as to what is proper, just, and politic, both in respect to the subjects of taxation and the kind and amount of taxes, must be final and con-

clusive. *Providence Bank v. Billings*, 4 Pet., 561. *Shaw v. Denis*, 5 Gilmn, 418. *Wynehamer v. The People*, *supra;* Cooley on Const., 512; Potter's Dwarris, 419. *Kirby v. Shaw*, 49 Pa. St., 261.

It is, however, a fundamental principle of law that a citizen cannot be deprived of his private property except by the due and orderly administration of the law, through its appropriate tribunals, and not by force of an act of the legislature. Hence, the legislative department cannot, by the exercise of legislative power, in any form of legislation, take the private property of one citizen and give it to another or to a corporation. Such an act would be judicial, depriving a citizen of his property without notice or due process of law, and would be repugnant to the constitution, and contrary to the fundamental principles of all good government. Therefore, when the *sole* object of a legislative act is to take the property of one man and give it to another, the legislature transcends its legitimate power, and assumes the determination of grave questions, over which it has no constitutional authority. In such case the strict division of the powers of the government should be enforced and the legislature be restrained from such invasion of private rights. *Good v. Zercher*, 12 Ohio, 367. *Norman v. Heist*, 5 W. & S., 171. *Denny v. Mattoon*, 2 Allen, 361. *Greenough v. Greenough*, 11 Pa. St., 494. *Shawnee v. Carter*, 2 Kan., 131. *Holden v. James*, 11 Mass., 396. 2 Kent. Com., 13.

But the doctrine seems to be equally well settled " that no court can pronounce an act of the legislature void," because it may be imperfect or impolitic, or " for any supposed inequality or injustice in its intention or its operation, provided it be upon a subject matter fairly within the scope of legislative authority;" and to bring the validity of a legislative act within the control of the judiciary, it must be clearly subversive of the con-

stitution.   There is no mixed power, partly legislative
and partly judicial, to be exercised in concert or in com-
mon by the legislative and judicial departments of the
government.   The courts have no right to legislate, and
the legislature have no right to  adjudicate, for the
reason that the line which  separates  them  in the  ex-
ercise of power is clear and distinct, and this princi-
ple is well settled and understood.   It is said that if the
courts were to declare an act unconstitutional, merely be-
cause in our opinion we may consider such act wrong
and unjust, " it would be assuming a right to change
the constitution, to supply what we  might conceive to
be its defect, to fill every *casus omissus*, and to interpo-
late into it whatever, in our opinion, ought to have been
put there by its framers." *Sharpless v. Mayor, &c.*, 21 Pa.
St., 161.   1 Vesey, Jr., 375.   *Penn v. Lord Baltimore*,
Vesey, 446.   *State of  Georgia v. Stanton*,  6 Wallace,
71.   *Cherokee Nation v. Georgia*, 5 Pet., 20, 30. · *Arm-
ington v. Barnet*, 15  Vt., 749.   *Maize v. Butler*, 4
Ind., 344.   *Fletcher v. Peck*, 6 Cranch, 87.   *Butler
v. Supervisors of  Saginaw*, 26 Mich.

Now, in the application of these general principles of
law to the· case under consideration, they would seem
to afford a  sufficient  answer to  the  question pro-·
pounded; but the importance of the question demands
further examination.   The city of Omaha derives its tax-
ing powers from " an act to incorporate cities of the first
class," approved, March 28, 1873.   Section twenty-four
of this act provides that, " the mayor and  council shall
have power to levy and collect taxes for general pur-
poses, not exceeding ten mills on the dollar, in any one
year, on *all real estate* and personal property within the
corporate limits  of  the city, *taxable according to the
laws of  the state*, the valuation of such property to be
taken from the assessment roll of the proper county,
and it shall be the duty of the county clerk to permit

the city clerk to make out from the assessment rolls
ot the county an assessment roll for the city of *all*
property liable to taxation, as above specified." By
this act the legislature has made the city of Omaha a
tax district, as well as a municipal corporation, and has
made all real estate and personal property within its
corporate limits liable to taxation, which is taxable ac-
cording to the laws of the state. Now, the act is consti-
tutional or it is not. If it shall be pronounced unconsti-
tutional, and its passage an unauthorized exercise of
legislative power, then it is wholly void, and the result
of such determination would be, that the city is not a
tax district, and there would be no authority in the
municipal corporation to levy and collect any taxes
within its corporate limits. This result seems clear from
the fact, that the only question which the court can con-
sider is, whether the act conflicts with the constitution,
and not whether the court shall classify the property
within the tax district into such as shall be taxable and
such as shall be exempt from taxation. The court can
only determine as to the constitutionality or unconsti-
tutionality of the act, and when it goes beyond this
inquiry, and attempts to classify the property into such
as shall be taxable and such as shall not, it assumes the
exercise of legislative power, which belongs exclusively
to the legislative department of the government. But
does the act conflict with the constitution? It provides
for a tax on all real estate and personal property within
the limits of the city, taxable according to the laws of
the state. This is an evident intent to equalize the pub-
lic burden so far as practicable, and unquestionably the
establishment of such a system of taxation is a proper
and legitimate subject of legislative authority. Cooley,
in his treatise on Constitutional Limitations (503), says
that " whenever the corporate boundaries are establish-
ed, it is to be understood that whatever property is in-

cluded within those limits, has been included by the legislature, because it justly belongs there, as being within the circuit which is benefited by the local government, and which ought, consequently, to contribute to its government." But as the land described in the petition is not laid out into lots, but is used for agricultural purposes, it is insisted that it is not subject to taxation for city purposes. And the rule contended for is, that the theory of compensation to the owner of property within the corporate limits of a city by way of protection or benefit, derived from the city government, applies to property used and occupied for city purposes, and is co-extensive, only, with that line or point where it ceases to operate beneficially to the proprietor in a municipal point of view. Who is the arbiter to define this line—and where is it to be exactly found? If the judiciary is to act as such arbiter, then it seems clear that it must do one of two things, either to pronounce the act unconstitutional—and upon such decision as already shown the tax district will be destroyed—or it must, by legislative action, amend and change the law, and classify the property within the city limits, so as to subject part thereof to taxation, and exempt the other part from taxation, and this must be done by piecemeal as each case shall arise. But in the adjudication of cases which must constantly arise under the rule contended for, it seems impossible to discover any test or criterion by which uniformity and certainty of decisions may be obtained. The opinions of men are so diversified and varied, that what to one mind may seem clearly right and proper, to another may clearly appear to be wrong and unjust. By one court lands may be adjudged subject to taxation, and by another the same lands, or lands similarly situated, may be adjudged exempt from taxation. Which would be right? Who can decide the question? It therefore seems difficult to escape the conclusion that

the decision of each case, as it shall arise, must depend upon the caprice of the arbiter who determines it, for he cannot resolve the question upon any principle of legal science. Hence the exercise of judicial power in apportioning the taxes of a district affords no security against the abuse of the taxing power; but on the contrary, it may be fraught with more danger, and result in greater injustice, than a uniform system of taxation established by legislative enactment. But if the courts can exercise the power to arbitrarily classify the property of a tax district into such as shall be subject to taxation and such as shall not, why may they not extend the classification, and provide that lands used for growing corn shall be taxed, and those for growing wheat shall not; that lands used for gardens and orchards shall be taxed, and those occupied for manufacturing purposes shall not? And thus the classification may be extended to different kinds and uses and descriptions of property indefinitely.

If the power can be exercised in the one case, upon what principle shall the courts be inhibited from exercising it in the others? The principle upon which the authority must rest in the one case must be equally legitimate and apply with equal force in the others. However, I do not believe that such is the law; and I understand that it is an essential principle in taxation that there must be some system of apportionment, and the assessments should be uniform upon all the taxable property within the tax district. Again, if the rule contended for rests on the ground that lands within the tax district which are used for agricultural and horticultural purposes do not receive the same degree of benefit as other property in the district—and this seems to be the ground most strongly urged in support of the rule—then to be just and consistent in principle, the rule must apply with equal force to all kinds and de-

scription of property not in degree equally benefited with other property. But where shall the line be drawn between that which shall be taxed and that which shall not? Again, the rule will apply with equal force to road districts throughout the county, for lands adjacent to the highways will be more benefited by such public roads than lands distant from them; and hence the latter should be exempt from taxes to open and repair the public roads. In the erection of the public buildings of a county, the property in the town or city where they shall be located will be benefited more by reason of such location of public buildings than that in other parts of the county. So the property of the county in which the capital of the state is located is, in degree, benefited by reason of such location, more than that of other counties of the state, and therefore if the rule is correct in principle it must apply in such cases. It is only necessary to state these consequences which must result in the application of the rule to show it is impolitic, and fraught with danger in any attempt to enforce it by the exercise of judicial power.

Therefore, when tested by its legitimate and logical results, it seems clear that the rule contended for cannot be sustained on any ground of sound policy, and cannot by any just and fair system of taxation be applied in the apportionment, levy, and collection of taxes in a tax district. In *Kirby v. Shaw*, 19 Penn. State, 261, Gibson, J., in discussing the question of taxation, says: "It is illogical to argue from an extreme case, or from the abuse of a power to a negation of it;" and again, that in the levy of taxes, if "equality were practicable, in what branch of the government would power to enforce it reside? Not in the judiciary, unless it were competent to set aside a law free from collision with the constitution because it seemed unjust. It could interpose only by overstepping the limits of its sphere; by

arrogating to itself a power beyond its province; by producing intestine discord; and by setting an example which other organs of the government would not be slow to follow. * * * The taxing power must be left to that part of the government which is to exercise it." And it may be added, that it is "not every disproportion between the sum which a citizen pays, and the interest which he as an individual has, in the purposes to which it is applied, that can make a tax law void." *Gordon v. Cornes*, 47 N. Y., 614.

A tax is properly a charge apportioned among the people of a tax district, so that each individual within its boundaries shall pay his proportionate share of the public burdens, and hence a state tax is apportioned throughout the state, a county tax throughout the county, and a city tax throughout the city.

In support of the rule contended for, the plaintiff mainly relies upon the decisions of the supreme courts of Iowa and Kentucky, which have been followed in the case of *Bradshaw v. The City of Omaha*, 1 Neb., 16. It is conceded that the Iowa cases are directly in point, but with all due respect to which the able opinions of that court are justly entitled, it seems to me that in the decisions of that court upon the question under consideration, the court must arrogate to itself power which exclusively belongs to the legislature; and in reference to the conclusion reached in that state upon this question, Cooley, in his treatise on Const. Lim., 501, in a note says: "It would seem as if there must be great practical difficulties—if not some of principle—in making this disposition of the case." I think the principle fairly deducible from the Kentucky cases goes no further than this: that "where the original limits of a town are not filled up, and it has not in fact extended itself beyond them on either side," the adjacent vacant and farm lands cannot, by extension of the city boundaries

or otherwise, be subjected to taxation by the town for the mere purpose of increasing its revenues. And this deduction seems to be clearly sustained by the case of *Cheaney v. Hoover*, 9 B. Mon., 335; for in this case, after stating that it is the imperious duty of the legislature to provide specially for the government of towns by incorporation, it is said, that "if they be within the legislative discretion, whatever abuse of that discretion there may be in any particular instance, or whatever apparent oppression or injustice may be the consequence, there is no remedy for its correction but in an appeal to the legislature itself, unless the complaining party can rest his case upon some prohibition of the constitution, or some right secured by that instrument. An act of the legislature, not interdicted by the constitution, being the law of the land, no other department or tribunal can, upon its own sense of justice or propriety, arrest its operation. The wisdom and justice and discretion requisite for deciding on the expediency of all legislative measures must be assumed to be in the legislature itself, where the constitution has placed the power of adopting or rejecting the measure. And the judiciary, instituted for the purpose of administering the law, has no right or power to deny effect to a legislative act, except upon the ground of its being repugnant to the constitution, and of its being therefore, in consequence of the supremacy of that instrument, and of its express declaration, *no part of the law of the land*." This was an action for the taking and conversion of one horse; the defendant averred that the property was taken by distress for the payment of taxes, and a judgment for the defendant was affirmed. In the state of Iowa the classification of real estate into such as shall be taxable and such as shall not, is by the court applied to cities without any regard as to whether the property is situated within the original limits of the city or is brought within

the tax district by extension of the original boundaries or otherwise. Passing the numerous cases found in the reports of that state on the subject, I will only bring into review the case of *Durant v. Kauffman*, 34 Iowa, 194, in which I think there is a great departure from the doctrine enunciated in the former decisions upon the question. In this case large tracts of land within the city limits are held subject to taxation for city purposes; but it is, however, said that "the mere fact that lands are included within the limits of the municipal corporation does not authorize their taxation for general city purposes;" for, "if the property proposed to be taxed derives no benefit from being within the city limits" it is exempt from taxation for such purposes. This is said to be the rule recognized by the various decisions of that state upon that subject, and that "there is no difficulty in deducing the rule from the adjudications, but there is, on account of its general terms, great difficulty in applying it to actual cases." And as an illustration of the rule, it is said, "there would be neither reason nor justice in permitting the proprietor of a large tract of land within a city to hold it for an opportunity to bring it into the market as city lots, and for no other purpose, under pretense that it is agricultural land, thus escaping taxation for general improvement of the city, the very thing which will bring his lands into the market, and thus add greatly to their value—a direct benefit to the owner. In such case the general improvement of the city, the building of streets near or in the direction of the lands so held, etc., by which the property of the city is advanced and an invitation to population is held out, all bestow direct benefits upon the owner of such property. The lands being part of the city in fact, and held by their owner for increase in value which he expects, because they are city lots, are benefited by the municipal government, and share in the benefits derived from the

expenditure of revenue raised by taxation. If property
so held within the city, whether it be subdivided into
lots and streets thereon, or dedicated to public use, or
be *enclosed and cultivated as agricultural lands*, it
ought to be subject to general municipal taxation. This
result is directly deducible from the rule." And if this
result is directly deducible from the rule, it will indeed
be difficult to discover any part of the rule left to apply
in the exemption of lands from taxation; for if under
the rule *any* lands "enclosed and cultivated as agricul-
tural lands" are "subject to general municipal taxation,"
why shall not the rule apply in the same way to *all*
other lands similarly situated, and to vacant lands? Upon
what principle can it be said that it shall so apply in the
one case, and not apply in like manner in the other
cases? It is said the lands are "*part of the city in fact*,"
and by the "general improvement of the city," they are
"advanced, and an invitation to population is held out,
and all bestow direct benefits upon the owner of such
property," and he is "benefited by the municipal gov-
ernment, and shares in the benefits derived from the ex-
penditure of revenue raised by taxation." If this be
true, and no doubt it is, then the logical conclusion and
actual result are as certain as cause produces effect—that
all other lands within the original city limits must, in
like manner, from the same cause be advanced, and the
owners be benefited more or less by the expenditure of
revenue raised by taxation for municipal purposes. But
must the different application of the rule in the one
case from that in the other, depend upon the supposed
ultimate disposition the owner intends to make of his
property? If this is the ground upon which the tax
must be imposed in the one case, then it is quite clear
that it is the *intent* of the owner in respect to his ulti-
mate disposition of his property, and not the *land itself*,
that is taxed. But upon what principle or authority can

this *intent* as to the ultimate disposition of his property be made the subject of taxation? It seems to me, it is alone upon the assumed right of legislative action by the court, that the application of the rule must rest.

Again, it is further said in illustration of the rule, that land within the city limits, used for purposes of dwellings or business, though " it be far from improved streets, nevertheless will be charged with the burdens common to other property." Now, if land " enclosed and cultivated," situated perhaps near the business part of the city, or at any point within its limits, shall be exempt from taxation, on the ground that it derives but little or no benefit from the fact of being within the limits of the city government, upon what ground can it be maintained that a single lot, with a small dwelling-house thereon, situated in some remote corner of the corporate limits, less benefited, shall be taxed to pay its proportionate share of the burdens of the city government? The argument is more imaginary than logical, and the proposition need only be mentioned to demonstrate its absurdity. Surely the rule is impolitic, inconsistent, and unjust. The reason given for the taxation of property in the one case is unanswerable, and applies with equal force to all other lands. It is this: that the claim for exemption " would be answered by the simple consideration of the fact, that cities are established for the very purpose of people living together in communities, increasing the general and individual prosperity; that such beginning is usually an inconsiderable population, with territory sufficient for its probable increase, and that because part of the land included within the limits of the city is not now wanted for actual occupation, *it cannot be deprived* of all the benefits of the city, and *released from all its burdens*."

" Taxation must precede improvements, and the citizen must look to the municipal government for the benefit

to which he is justly entitled in the way of improvements. He cannot, in case that government fails to improve the streets leading to his property, or to establish and open such other streets as his wants require, or to do other things which his interest demands, separate himself from the body of the citizens and refuse to contribute, in the way of taxes, to the general good of the whole city. * * * * The police power of the city is exerted for his protection in maintaining good order, and if he be threatened by the evil-disposed, or should crimes be committed against his person or property, his safety is secured and offenders are brought to punishment by the municipal ministers of the law." And it might be added, that he is an elector in choosing the officers of the municipal government, entitled to all the rights and privileges of such government equally with every other citizen thereof. He may hold office and exercise the same rights and powers equally as any other citizen in directing the police regulations of the city and in the assessment of the taxes necessary to pay the public expenses of the common government.

Now, the sum of the whole matter is, that all the property of the city, or rather of the tax district, constitutes its wealth, and the cardinal principle in the imposition of taxes is, that they should be apportioned among all the citizens of the district according to the value of their respective properties; for all are benefited more or less, and *all* are equally protected by the laws of the common government; and upon this power to assess and tax the individual property depends the very existence of the government and the maintenance of the orderly administration of its police system.

In the case of *The City of St. Louis v. Russell*, 9 Mo., 508, the land of defendant had ever been occupied and cultivated as a farm, and by subsequent acts of legislation it was brought within the corporate limits of the

city. The defendant complained that "his land has been embraced within the limits of the corporation of St. Louis against his consent," and he prayed "an injunction to restrain the city from selling his land for city taxes." It was by the supreme court decreed "that the injunction granted by the circuit court be dissolved, and the bill of complaint dismissed." In *Wells v. City of Weston*, 22 Mo., 385, the legislative act conferred power on the city "to assess and tax all real estate outside of and adjacent to the corporation, to the distance of one-half mile." The court says the only question is, "whether it is competent for the legislature to confer upon the city of Weston authority to tax, for local purposes, land lying beyond the corporate limits," and the decision is, "that the legislature cannot authorize a municipal corporation to tax, for its own local purposes, lands lying beyond the corporate limits."

In conclusion, for the purpose of guarding against any erroneous inference which might be drawn from this opinion, it is proper to state, that the issues in the case at bar do not present for our consideration one in which it may clearly appear that the *sole* object of the legislative act, extending the power of taxation by a city over a community or lands beyond its original limits, is to increase its revenues only, and not for the purpose of any municipal regulations or government over the same.

If this opinion is a correct exposition of the law, it is clear that the ruling upon the demurrer, and the decree rendered in the district court cannot be sustained; and, therefore, the demurrer must be sustained, and the injunction granted by the court below is dissolved, and the plaintiff's petition is dismissed with costs.

DECREE ACCORDINGLY.

LAKE, CH. J.

That the demurrer to the petition ought to have been sustained there is no doubt whatever. In this we are all agreed. But the majority of the court are of the opinion that this decision should be upon the ground alone that the facts stated were not sufficient to constitute a cause of action. This was the reason alleged in the demurrer, and the only one. Wherefore the court was precluded from inquiring as to whether the two causes were properly joined or not. Section ninety-five of the code of civil procedure provides that "the demurrer shall specify distinctly the grounds of objection to the petition. Unless it do so, it shall be regarded as objecting only that the petition does not state facts sufficient to constitute a cause of action." So long, therefore, as the defendant did not object to the misjoinder of distinct causes of action, it was not within the province of the court to do so. But even if the demurrer had specified the misjoinder as ground of objection—which it no doubt was—we should place our decision solely on the ground that the alleged causes of action do not fall within the operation of section eighty-seven of the code of civil procedure, which permits legal and equitable causes of action to be united whenever they arise out of "the same transaction or transactions connected with the the same subject of action." That these two causes of action do not fall within a class that may properly be united under the section of the statute just quoted is very clearly shown in the opinion of our brother GANTT, and we think if the question were properly before the court, that the decision should be placed upon this ground alone.

The views of the majority of this court as to the constitutionality of the statute which permits legal and equitable causes to be united in one action are distinctly

set forth in *Wilcox v. Saunders*, 4 Neb., 569, to which we refer. We there used this language: "In regard to the power of the legislature, under the constitution of 1867, to blend law and equity cases in one form of action by the abolition of the distinction formerly existing between them, and authorizing their joinder in the same petition, we entertain no doubt whatever. On the contrary, we think the authority to do all that the code provides in this particular is clear."

The decision in *Wilcox v. Saunders* was under the constitution of 1867; but, so far as this question is concerned, our new constitution makes no change whatever in the law; by each of them the district courts were given "both chancery and common law jurisdiction," so that what we said in that case is equally applicable in this. For the reason, therefore, that the petition fails to state a cause of action, the demurrer is sustained, the injunction granted by the court below dissolved, and the action dismissed at the plaintiff's costs.

DECREE ACCORDINGLY.

Mr. JUSTICE MAXWELL concurs.